# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| CYNTHIA JOHNSON, WENDY UNTERSHINE, and THOMAS OLSZEWSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>v.<br><br>ARS NATIONAL SERVICES, INC.,<br><br>        Defendant. | Case No.: 19-cv-1137<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.    This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats, (the "WCA").

## JURISDICTION AND VENUE

2.    The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.    Plaintiff Cynthia Johnson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.    Plaintiff Wendy Untershine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.    Plaintiff Thomas Olszewski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.     Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each Plaintiff, debts allegedly incurred for personal, family, or household purposes.

7.     Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from each Plaintiff was incurred as a result of a consumer transaction with agreements to defer payment.

8.     Defendant ARS National Services, Inc. ("ARS") is a debt collection agency with its principal offices located at 201 W Grand Ave, Escondido, CA 92025.

9.     ARS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.    ARS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

11.    ARS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Relating to Plaintiff Johnson*

12.    On or about September 15, 2018, ARS mailed a debt collection letter to Plaintiff Johnson regarding an alleged debt owed to "Citibank, N.A." A copy of this letter is attached to this Complaint as Exhibit A.

13.    Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, used only for personal, family, or household purposes.

2

14.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Johnson inserted by computer.

15.      Upon information and belief, Exhibit A is a form debt collection letter used by ARS to attempt to collect alleged debts.

16.     Exhibit A was the first letter ARS sent to Plaintiff Johnson regarding this alleged debt.

17.     Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

18.     Exhibit A also includes the following representations:

**ACCOUNT IDENTIFICATION**
Creditor: Citibank, N.A.
Account No.: ************9673
ARS Reference No.: ▮▮▮3938
New Balance: $2,023.62
Minimum Payment Due: $361.66

19.     Additionally, Exhibit A states:

As of the date of this letter, you owe $2,023.62. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater and an adjustment may be necessary after we receive your payment.

20.     By stating "you owe $2,023.62" alongside the statement "Because of interest, late charges, and other charges … the amount due on the day you pay may be greater," Exhibit A would indicate to the unsophisticated consumer that the entire "New Balance" is due and payable to the creditor as of the date of the letter.

3

21.     Exhibit A is thus confusing to the unsophisticated consumer.  It is unclear whether ARS is collecting the entire $2,023.62 "New Balance" or just the $361.66 that was represented to be the "Minimum Payment Due."

22.     "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004).

23.     On a credit card account, the amount "due" and the amount "owing" are different concepts.  *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' For example, a debtor might 'owe' a certain amount on a loan, but only a portion of that amount will be 'due' at a particular time."); *see also Chuway*, 362 F.3d at 947-48 (debt collector violates the FDCPA by confusing consumer or misleading the consumer to believe it is collecting portions of the balance which "might not yet be due, let alone overdue.").

24.     It is not unusual for banks to hire a debt collector to collect only the "past due" portions of a credit card account, *i.e.,* the missed payments of and fees, rather than the entire balance, and in fact may be improper for a bank to engage a third-party debt collector to attempt to collect portions of the account which are not yet due.  *See Barnes v. Advanced Call Ctr. Techs., LLC*, 493 838, 840 (7th Cir. 2007) ("only the past due amount, the amount owed [to the debt collector] can be the 'amount of the debt' under § 809(a)(1).").

25.     Upon information and belief, the creditor of Plaintiff Johnson's alleged debt had not accelerated the balance of Plaintiff's account as of the date of Exhibit A.

26.     Plaintiff Johnson read Exhibit A.

27.     Plaintiff Johnson was confused and misled by Exhibit A.

28.     The unsophisticated consumer would be confused and misled by Exhibit A.

29.     Plaintiff Johnson had to spend time and money to investigate Exhibit A and the possible consequences of responding to Exhibit A.

30.     Plaintiff Johnson had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *Facts Related to Plaintiff Untershine*

31.     On or about November 17, 2018, ARS mailed a debt collection letter to Plaintiff Untershine regarding an alleged debt owed to "Crown Asset Management, LLC," and with an "Original Creditor" listed as "Synchrony Bank/TJX Rewards."A copy of this letter is attached to this complaint as Exhibit B.

32.     Upon information and belief, the alleged referenced by Exhibit B was incurred by use of a credit card, used only for personal, family, or household purposes.

33.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Untershine inserted by computer.

34.     Upon information and belief, Exhibit B is a form debt collection letter used by ARS to attempt to collect alleged debts.

35.     Upon information and belief, Exhibit B is the first written communication that ARS sent to Plaintiff Untershine regarding the alleged debt to which Exhibit B refers.

5

36.     Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the alleged debtor along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

37.     Exhibit B also contains the following settlement offer:

Subject to your rights noted above, one option to resolve your account is to settle your account for the reduced amount of $226.87, a savings of $226.87. If you cannot make the settlement payment by 12/22/2018, please contact us to discuss alternative arrangements. We reserve the right to treat any missed or late payment as a cancellation of the agreement. We are not obligated to renew this offer. This does not affect your rights as described above.

38.     The settlement offer is plainly confusing and misleading---the offer is a lump sum offer with only one payment but also states that "We reserve the right to treat any missed or late payment as a cancellation of the agreement."

39.     Moreover, the above offer requires the consumer to "make the settlement payment by 12/222018" or it is void, and the consumer must contact ARS "to discuss alternative arrangements." Exhibit B.

40.     Exhibit B states "We reserve the right to treat any missed or late payments as a cancellation of the agreement. We not obligated to renew this offer."

41.     Upon information and belief, the statement that the settlement payment expires on December 22, 2018 is a false, deceptive, and misleading representation.

42.     Upon information and belief, the consumer may settle the debt based on the offer in Exhibit B, or pursuant to an offer for less, at any time.

6

43.     In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 775-76 (7th Cir. 2007).

44.     While Exhibit B tracks this safe-harbor language, in the context of Exhibit B, the language does not have its intended effect.

45.     As a practical matter, the unsophisticated consumer is not an FDCPA lawyer. She does not know that the purpose of the statement that "we are not obligated to renew this offer" is to make her "realize that there is a renewal possibility but that it is not assured."

46.     Instead, where the debt collector states that it is not obligated to renew an offer but purposefully nests this language between statements that "We reserve the right to treat any missed or late payment as a cancellation of the agreement," the unsophisticated consumer would understand Exhibit B to mean any renewal possibility was contingent on the consumer accepting the settlement offer, but missing the payment.

47.     The unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language if it will rescind the offer.

7

48.     In the context of <u>Exhibit B</u>, the unsophisticated consumer would interpret a debt collector's statement that it is "not obligated to renew" as an implied threat that the settlement offer would not be renewed unless the consumer accepted the settlement offer prior to the expiration date.

49.     Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances.  *E.g., Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018)("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed …"); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor … for the kind of suit Bartlett has brought and now won.  The qualification 'for the kind of suit that Bartlett has brought and now won' is important.  We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

50.     The safe-harbor language used in <u>Exhibit B</u> was created specifically to ensure that the expiration date did not mislead the consumer to believe there would be no renewal

8

possibility. In the context of <u>Exhibit B</u>, the safe-harbor language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability.

51.     The unsophisticated consumer, assuming the settlement offer would not be available after the expiration date, would feel intimidated into paying. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

52.     Moreover, providing the settlement offer alongside the validation notice contradicts and overshadows the consumer's validation rights.

53.     The settlement offer in <u>Exhibit B</u> is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

54.     The unsophisticated consumer, unsure when the settlement offer in <u>Exhibit B</u> expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment. Thus, there is an apparent contradiction between the settlement offer and the validation notice.

9

55.     The unsophisticated consumer would be confused about whether the settlement offer in Exhibit B would require her to forego her rights to validate the debt.

56.     The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

57.     The plain language of Exhibit B is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

58.     Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit B, under the terms of Exhibit B, the debt collector might:

    a.   Hold the payment in escrow pending verification of the debt;

    b.   Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

    c.   Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

59.     Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

10

60.     Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit.  *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation.  In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

61.     The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

62.     The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter.  If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

63.     Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment.  By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

64.     Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit B.

65.     The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of

the 30-day period in 15 U.S.C. 1692g(a).  *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85,

95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection

letter to consider her options.").

66.    Prior to deciding whether to dispute a debt, a consumer may have to sort through

personal records and/or memories to try to remember if the debt might be legitimate. She may

not recognize the creditor – debts are freely assignable and corporations, especially banks, often

change names.

67.    The § 1692g validation period lasts for 30 days. It is the consumer's right to

*request* verification until the end of the thirty-day period.  If the request is not made until the end

of the thirty-day period, the verification request would not be processed, researched by the

creditor, and returned to the consumer until long after settlement offer payment deadline has

expired.  The consumer would be left with no time to review the verification and determine

whether to accept the settlement offer.

68.    The unsophisticated consumer would have no idea how to both seek verification

of the debt and preserve the settlement offers in Exhibit B.  The unsophisticated consumer would

believe that the settlement offer would expire before the debt collector provides verification and

would be left with little or no time to review the verification and determine whether to accept the

settlement offer.

69.    The effect of the settlement offer in the initial written debt communication is to

discourage or prevent consumers from exercising their validation rights.

12

70.     Defendant's "explanatory language" in <u>Exhibit B</u>, *see, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997), does not clarify how---or even whether---a debtor may both dispute the debt and take advantage of the settlement.

71.     Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

72.     Plaintiff Untershine read <u>Exhibit B</u>.

73.     Plaintiff Untershine was confused and misled by <u>Exhibit B</u>.

74.     The unsophisticated consumer would be confused and misled by <u>Exhibit B</u>.

75.     Plaintiff Untershine had to spend time and money to investigate <u>Exhibit B</u> and the possible consequences of responding to <u>Exhibit B</u>.

76.     Plaintiff Untershine had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Untershine on the consequences of <u>Exhibit B</u>.

### *<u>Facts Related to Plaintiff Olszewski</u>*

77.     On January 8, 2019, ARS sent a debt collection letter to Plaintiff Olszewski via a facsimile transmission care of Plaintiff's counsel regarding an alleged debt owed to "Citibank, N.A." A copy of this letter is attached to this complaint as <u>Exhibit C</u>.

78.     Upon information and belief, the alleged debt referenced in <u>Exhibit C</u> was a personal credit card account and used only for personal, family, or household purposes.

79.     Upon information and belief, <u>Exhibit C</u> is a form letter, generated by computer, and with the information specific to Plaintiff Olszewski inserted by computer.

13

80.     Upon information and belief, <u>Exhibit C</u> is a form debt collection letter used by ARS to attempt to collect alleged debts.

81.     <u>Exhibit C</u> lists "Balance" as $13,919.12.

82.     <u>Exhibit C</u> also includes the following settlement offer:

This letter confirms that ARS is duly authorized to accept **$5,568.00** to settle the above-referenced account. The settlement amount is due as follows:

| Payment 01: | $5,568.00 | Due on: | Tuesday, January 08, 2019 |
|---|---|---|---|

83.     The settlement offer included in <u>Exhibit C</u> is facially confusing; the letter purports to offer a settlement offer of $5,568.00, but states that payment of such amount must be made by January 8, 2019, the date the facsimile transmission was sent.

84.     The consequences of misleading a consumer with respect to settling a debt are greater than misleading the consumer about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to a few remaining dollars or cents of interest, however, ARS and/or the creditor could continue to collect the remaining balance of the alleged debt, plus any additional interest that had accrued.

85.     Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Winiecki v. Creditors Interchange Receivable Mgmt., LLC*, 14 F. Supp. 3d 1086,

14

1093 (N.D. Ill. Jan. 27, 2014) ("It is not enough for a collection letter to state the elements required by the FDCPA; it must state the terms of the settlement offer 'clearly enough that [an unsophisticated consumer] is likely to understand it.") (quoting *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (in the context of settlement offers, "ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments violated the FDCPA).

86.     Plaintiff Olszewski read Exhibit C.

87.     Plaintiff Olszewski was confused and misled by Exhibit C.

88.     The unsophisticated consumer would be confused and misled by Exhibit C.

89.     Plaintiff Olszewski had to spend time and money to investigate Exhibit C and the possible consequences of responding to Exhibit C.

90.     Plaintiff Olszewski had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit C.

15

### The FDCPA

91.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by

16

definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

92.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

93.     Misrepresentations of the character, amount or legal status of any debt, including amounts necessary to settle the debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication

17

directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

94.     15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

95.     15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

96.     15 U.S.C. § 1692e(5) prohibits: "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

97.     15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

98.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

99.     15 U.S.C. § 1692g(a) provides that:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) The amount of the debt;

100.    15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**

…

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### The WCA

101.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

102.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

103.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

104.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

105.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

19

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

106.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

107.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

108.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

109.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

110.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

111. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

112. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

113. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

114. Count I is brought on behalf of Plaintiff Johnson.

115. By equivocating as to whether it is seeking the "Minimum Payment Due" or the entire "New Balance" of Plaintiff Johnson's alleged debt, Exhibit A is misleading as to the amount of the debt it is seeking to collect and attempts to collect an amount which ARS lacks the legal authority to collect.

116. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, 1692g(a)(1), and 1692g(b).

## COUNT II – WCA

117. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

118. Count II is brought on behalf of Plaintiff Johnson.

21

119. By claiming Plaintiff Johnson owes the entire "New Balance" of her alleged debt, Exhibit A attempts to claim a right which ARS had reason to know did not exist and implicitly threatens consequences for failing to pay such amount.

120. Defendant violated 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDCPA

121. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

122. Count III is brought on behalf of Plaintiff Untershine.

123. The statement in Exhibit B that the consumer must make the settlement payment by a specified expiration date are false, deceptive, and misleading.

124. The statements in Exhibit B that the consumer must make the settlement payment by a specified expiration date conflict with and overshadow the debt validation notice, in that the unsophisticated consumer would not know whether she would effectively dispute the debt if she tendered a settlement payment along with a dispute letter.

125. Exhibit B is confusing, deceptive, and/or misleading to the unsophisticated consumer.

126. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## COUNT IV – FDCPA

127. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

128. Count IV is brought on behalf of Plaintiff Olszewski.

129. By including a purported settlement offer which expires on the day the letter was sent, Exhibit C includes representations which are false, deceptive, and misleading as to the terms of such settlement offer.

130. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## CLASS ALLEGATIONS

131. Plaintiffs bring this action on behalf of three Classes.

132. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) where the letter was mailed between August 6, 2018 and August 6, 2019, inclusive, (e) and was not returned by the postal service. Plaintiff Johnson is the named representatives of Class I.

133. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) where the letter was mailed between August 6, 2018 and August 6, 2019, inclusive, (e) and was not returned by the postal service. Plaintiff Untershine is the named representatives of Class II.

134. Class III consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) where the letter was mailed between August 6, 2018 and August 6, 2019, inclusive, (e) and was not returned by the postal service. Plaintiff Olszewski is the named representatives of Class III.

23

135.     Each Class is so numerous that joinder is impracticable.   On information and belief, there are more than 50 members of each Class.

136.     There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether the Defendant complied with the FDCPA and the WCA.

137.     Plaintiffs' claims are typical of the claims of the class members.   All are based on the same factual and legal theories.

138.     Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

139.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

140.     Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  August 6, 2019

24

**ADEMI & O'REILLY, LLP**

By:   <u>/s/ Mark A. Eldridge</u>
      John D. Blythin (SBN 1046105)
      Mark A. Eldridge (SBN 1089944)
      Jesse Fruchter (SBN 1097673)
      Ben J. Slatky (SBN 1106892)
      3620 East Layton Avenue
      Cudahy, WI 53110
      (414) 482-8000
      (414) 482-8001 (fax)
      jblythin@ademilaw.com
      meldridge@ademilaw.com
      jfruchter@ademilaw.com
      bslatky@ademilaw.com